White, J.
The object of the proceedings in this case, is to test the constitutionality of the act of April 6, 1870, limiting the compensation of certain officers therein named. 67, O. L. 39.
The third section of the act provides, among other things, as follows: “The judges of the court of common pleas in joint session, shall, from time to time, fix the maximum compensation of all deputies, clerks, book-keepers and other assistants, who may be employed by the treasurer, auditor, recorder, sheriff, probate judge, and clerk ; which compensation shall be paid to them monthly, out of the county treasury, upon the warrant of the county auditor; and the number of deputies, clerks, book-keepers, and other assistants of the officers named in the first section of this act, shall be determined by said officers respectively, subject to *9 the approval of the judges of the court of common pleas ; and for no official act or duty shall any such deputy, clerk, book-keeper, or other assistant receive, to be retained by himself, any additional fee, salary or compensation, other than that fixed and provided for in this section.”
The duties required of the judges, by this section, in fixing the maximum compensation of clerks and other subor dinates iu the several offices named, and approving of the number, are described in the information as an office of trust; and the charge against the defendants is, that they have intruded into and usurped such office.
The objections urged on behalf of the relator against the validity of the act in question, are of a two-fold character :
First. That the act is, in its general object and effect, unconstitutional, and that the action of the judges referred to, is intended to operate only as one of the means .for carrying the provisions of the act into effect.
Second. That if the act is in other respects valid, it violates section 14, article 4, of the constitution, which provides that the judges of the supreme court, and of the court of common pleas, shall hold no "other office of profit or trust under, the authority of this State or of the United States.”
It is unnecessary for the purposes of this case, to refer in detail to the various provisions of the act. Its manifest object is to limit the annual compensation of the officers named, and to provide for the payment of such compensation from the earnings of their respective offices, after deducting the other necessary expenses; and to reduce the rate of fees and other charges that were authorized under former laws, to be exacted from those having business to be performed in such offices.
After deducting all necessary expenses, the annual compensation of the probate judge, the clerk, sheriff, and auditor, is limited to five thousand dollars ; of the treasurer to seven thousand dollars ; and of the recorder to thirty-five hundred dollars. All fees, costs, or other sums collected for services, are required to be paid into the county treasury as public *10 money ; and from this money, in the manner provided by the act, all the expenses of the respective offices, including the compensation of the officers, are required to be paid. The several officers named are also required to make reports, at stated periods, to the county commissioners, as to the earnings, under the law, of their respective offices. By section 14 of the act, the fees, costs, and percentage of the clerk, probate judge, sheriff, treasurer and auditor, are required to be reduced to eighty, and of the recorder to ninety per cent, of what was allowed before thó act, and is still allowed by the general laws of the State.
With the view, doubtless, of providing for the contingency, which it was supposed might occur in the practical operation of the new rule, of the amount collected under the reduced rate exceeding, in either office, what might be required to pay all the expenses of such office and the compensation of the officer, provision is made, by section 17, that in case the surplus of the fund received from either office shall exceed five thousand dollars, the excess may be transferred to the general funds of the county for its use.
This brief outline displays the general object and effect of the act, and the first question is, whether it is in conflict with the organic law of the State.
The first objection urged against the validity of the act, is, that it is a law of a general nature, the operation of which is limited to the county of Hamilton; and that it is, therefore, in conflict with section 26, of article 2, of the constitution, which requires, that, “ all laws of a general nature shall have a uniform operation thoughout the State.”
But, in the opinion of the court, this act cannot be regarded as a law of a general nature. The act was intended to provide for a condition of things in its nature local to Hamilton county. As already shown, its object was to provide a system for reducing the expenses of certain offices, and, by a rule of approximation, to secure the benefit of the reduction to the public.
There is nothing in the constitution prohibiting appropriate local legislation; and it seems to us that the amount *11 of compensation to be attacked to a local office, is a question in its nature local. Cricket et al. vs. the State, 18 Ohio St. 22.
Tbe result of any uniform rule, operating throughout the State, whether the compensation is made payable by fees or salary, would be either to make the compensation of officers inadequate in the small counties, or exorbitant in the larger and more populous ones. The attempt to graduate the compensation by population might, in many instances, wholly fail to accomplish the desired object. The character of the pursuits of the people, and of the locality itself as a commercial or manufacturing centre, form important elements in determining the compensation necessary to secure the l’equisite qualifications and force to properly discharge the duties of local offices.
The constitutionality of an act is to be determined by its operation, and not by the mere form it may be made to assume. But if there could be supposed to be any magic in words, the present act, like many others of a similar character in this respect, is, by its terms, made applicable to “every county in this state having a population of two hundred thousand inhabitants or more, as shown by the last federal census.”
Another objection urged to the act is, that it operates as a denial of justice to suitors; and, furthermore, that the fees and charges exacted under the act, in the several offices, are in the nature of a tax for the purpose of raising general revenue.
In so far as the objection rests on the rights and interests of suitors, it is a sufficient answer to say that if the objection were to prevail, and the act be held invalid, the fees and other charges required to be paid by them, would, thereby, be increased one fourth.
In regard to the other branch of the objection, as already indicated, the plain design of the act is not to tax those requiring official services, for the purpose of general revenue ; but to require payment of a reasonable compensation for the facilities afforded and the services performed. If, in the practical operation of the act, the effect should be tc *12 leave a surplus for the use of the county — which is contingent — this would result from the difficulty found in prescribing such rates of charges as to make the receipts exactly correspond with the cost of maintaining the offices. Exactness of correspondence, in this respect, cannot be attained; but experience, and the keeping accounts of the receipts of the various officers, will enable this end to be accomplished by reasonable approximation.
What has been stated as to the effect off the act in reducing the fees to be paid by suitors, applies also to those having to pay for official services who are not suitors. The act operates to their benefit, by lessening the charges to which they were subject under the general law.
In regard to the officer's it may be said, that the cheapening of official service to the public, can be no ground of complaint on their part; and, in respect to their reduced compensation for which the act provides, it is enough to say that they have consented to receive it by voluntarily accepting the offices.
It is competent for the legislature to provide for compensating all public officers by salaries. If it should see proper to do so, we know of no provision of the constitution that would foi'bid exacting from persons requiring, and who are especially benefited by the .performance of official services, a reasonable compensation therefor, to be paid into the public treasury to reimburse the public for the expense incurred in providing and maintaining such offices.
It is not essential to such exactions that they should inure to the personal benefit of the officer. The officers are but the agents of. the State for transacting the public business; and it is, in its nature, a matter wholly immaterial to those requiring their services, whether the amount to be paid therefor goes to the officer, or into the public treasury, provided no more is exacted than is just and reasonable for the facilities afforded, and the services performed. If the exactions are called taxes, they become none the less such as to those on whom they are imposed, by being paid to th? officer, than if mid into the nublic treasury.
*13 As respects the probate judge the act is claimed to be in conflict with sec. 7 of art. 4, of the constitution, which provides that he “ shall receive such compensation, payable out of the county treasury, or by fees, or both, as shall be provided by law. ”
It is contended that, under the act in question, the probate judge is paid neither by fees nor by salary; and, further, that if the fees collected and paid into the county treasury, shall prove no more than sufficient to cover the necessary expenses of the office, the probate judge will receive nothing.
The answer to these objections is, first — that he is still paid by fees, because paid out of them. The only change in the law, in this respect, is, that he does not get all the fees. He only receives such portion of them as the legislature deemed an adequate compensation. Second. The objection that in a certain contingency he would receive no compensation, may be answered by saying that such a contingency is not to be assumed. The suggestion is purely hypothetical, and the presumption as to the fact is against the assumption.
Nor do we perceive any force in the objection that he is required to collect the fees for services rendered in his office and to pay them into the county treasury. Where fees are properly authorized to be charged for official service, the officer rendering the service may be required to collect the fees.
Tire next question is, whether the defendants, in performing the duties which, under the act, they are authorized to perform, usurp, or intrude into an office of trust or profit distinct from that of judges. Whether they could be compelled to perform the duties which the act undertakes to require of them, is foreign to the present inquiry. They admit they are in the exercise of the authority conferred by the act. The question is, whether the authority they thus exercise, constitutes a distinct office, or is merely additional authority conferred upon them as judges.
We have no hesitation in saying that, in our opinion, the *14 act does not create or invest them with a, new office. What they are authorized to do they can only do by virtue of their office as judges. It does not follow from the fact that the new duties or powers might have constituted a new office, that, therefore, they do constitute such office. New duties may as well be attached to an existing office, as that part of the duties of an existing office may be assigned to a new one.
During the pendency of this proceeding the supplemental act of April 12, 1871 (68 O. L. 58), has been passed. This act provides for the appointment, by the judges, of an officer styled “ commissioner of costs and fees,” whose duty it is to have a general supervision of the matters provided form the acts, and to see that their provisions are duly observed. The defendants, in their plea, claim to be invested with the authority conferred by the supplemental, as well as by the original act. The questions as to the validity of both acts have been argued and considered. They both depend upon the same principles. Our conclusion is, that the demurrer to the plea must be overruled, and judgment rendered for the defendants.
Scott, C. J., and Welch, Day and MoIlvaine, JJ., concurred.